UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

URIAH L. OLIVER,

        Plaintiff,

        v.                                     Case No. 22-C-797

NICHOLAS BROOKS and
JOSHUA WILSON,

        Defendants.

## SCREENING ORDER

Plaintiff Uriah L. Oliver, who is currently serving a state prison sentence at Kenosha County Detention Center and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. On July 26, 2022, the court allowed Oliver to proceed on an excessive force claim against Defendants Nicholas Brooks and Joshua Wilson. Dkt. No. 7. On September 30, 2022, Defendants filed a motion to dismiss asserting that Oliver's claim is precluded by the *Rooker-Feldman* and *Heck* doctrines. Dkt. No. 19. Rather than responding to Defendants' motion, Oliver filed an amended complaint on October 19, 2022, Dkt. No. 25, rendering Defendants' motion moot. This decision screens Oliver's amended complaint.

### SCREENING OF THE AMENDED COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, and dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the

court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2).

## ALLEGATIONS OF THE AMENDED COMPLAINT

Oliver asserts that on May 24, 2022, he was sitting in his car in a store parking lot when Brooks pulled up behind him with his squad car lights flashing. Oliver explains that he exited his car, and Brooks approached him and asked Oliver if he had a girlfriend named Audria. Oliver informed Brooks that he did and that he had gotten into an argument. According to Oliver, Brooks asked him to explain what had happened. Oliver states that he said nothing had happened, to which Brooks informed Oliver that Audria had called the police and said she was scared after having had an argument with Oliver.

According to Oliver, he and Brooks continued to talk until Oliver told Brooks he was going inside the store. Oliver asserts that Brooks instructed him to stay outside until he figured out what had happened. Oliver explains that he then tried to open his car door, and Brooks told him no several times while charging toward him. Oliver asserts that he told Brooks not to touch him and, as he attempted to open his car door, informed Brooks he was leaving. Brooks again instructed Oliver not to get in the car, and, according to Oliver, grabbed Oliver's arm and started yanking him away from the car. Oliver explains that he broke away from Brooks' grasp and ran toward the store. Oliver asserts that Brooks yelled after him, telling him that he if he did not stop, he would be tased. Brooks and Wilson then chased Oliver into the store and yelled at him to get on the ground. Oliver explains that he initially refused to get on the ground, but then turned around

and held up his hands to show he was complying with their orders. He asserts that he then faced left and as he started to obey the order to get on the ground both officers tased him.

THE COURT'S ANALYSIS

Oliver asserts that Defendants violated his constitutional rights when they used excessive force against him and unlawfully detained him. A claim of excessive force to effect an arrest is analyzed under the Fourth Amendment. *Tennessee v. Garner*, 471 U.S. 1, 7–8 (1985). The court applies an objective reasonableness standard, considering the reasonableness of the force used in light of all the circumstances confronting the officer at the time. *See Horton v. Pobjecky*, 883 F.3d 941, 949-50 (7th Cir. 2018) (citations omitted). Oliver may proceed on a Fourth Amendment excessive force claim based on his assertions that Brooks and Wilson's simultaneous use of their tasers was unreasonable given that he had stopped fleeing and was in the process of complying with their orders when they tased him.

Oliver does not, however, state a claim based on assertions that Defendants unlawfully detained him. An investigatory stop is proper under the Fourth Amendment "if the officer making the stop is able to point to specific and articulable facts that give rise to a reasonable suspicion of criminal activity." *U.S. v. Bullock*, 632 F.3d 1004, 1012 (7th Cir. 2011) (citations and internal quotation marks omitted). "When determining whether an officer had reasonable suspicion, courts examine the totality of the circumstances known to the officer at the time of the stop, including the experience of the officer and the behavior and characteristics of the suspect." *Id.* (citations omitted).

Oliver explains that he exited his car and told Brooks he was going into the store to get his girlfriend. Oliver then confirmed to Brooks that his girlfriend was Audria and that they had argued. According to Oliver, Brooks informed him that Audria had called the police because she was

3

scared following an argument with her boyfriend. Given Audria's call and Oliver's admission that he and Audria had argued, Brooks had reasonable suspicion of Oliver's criminal activity and could therefore detain him briefly while he investigated his suspicion. Therefore, Oliver may not proceed on an unlawful detention claim.

Finally, although Oliver's filing of an amended complaint moots Defendants' motion to dismiss, it is worth noting that, contrary to Defendants' assertion, Oliver's excessive force claim is not precluded by the *Rooker-Feldman* or *Heck* doctrines. As Defendants state, the initial inquiry under the *Rooker-Feldman* doctrine "is whether the federal plaintiff seeks to set aside a state court judgment or whether he is, in fact, presenting an independent claim." *Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017). Defendants assert that, because Oliver was convicted of obstructing an officer, his federal civil lawsuit alleging that Defendants used excessive force when they tased him "effectively seeks to set aside the state court's judgment." Dkt. No. 20.

Defendants' assertion is incorrect. While the issues of whether Defendants used excessive force during the arrest and Oliver's obstruction of officers are *related*, they are not *inconsistent*. As indicated by Oliver's amended complaint, both can be true. Oliver admits that contrary to Brooks' orders, he tried to enter his car, he pulled away from Brooks' grasp, he ran away from Defendants, and he, at least initially, refused to get on the ground as ordered. According to the criminal complaint Defendants filed in support of their motion, Oliver was convicted, in part, for obstructing an officer "by failing to follow orders." Dkt. No. 21-1. Oliver does *not* assert that he followed all of Defendants' orders; he asserts only that Defendants tased him after he began to comply. Accordingly, because Oliver's obstruction conviction will stand even if Oliver prevails on his excessive force claim, the *Rooker-Feldman* doctrine does not apply. *See Sides v. City of Champaign*, 496 F.3d 820, 825 (7th Cir. 2007) ("Arguments concerning events that precede the

4

conviction—arguments that would be equally strong (or weak) if [plaintiff] had been acquitted—likewise are outside the scope of the *Rooker-Feldman* doctrine.").

Similarly, *Heck* does not bar Oliver's excessive force claim because prevailing on such a claim would not necessarily imply the invalidity of his conviction for obstructing an officer. *See Hardrick v. City of Bolingbrook*, 522 F.3d 758, 762 (7th Cir. 2008) (citing *Heck v. Humphrey*, 512 U.S. 477 (1994)). As already explained, Oliver alleges that Defendants used excessive force after he began to comply with their orders. Moreover, a fully developed record may reveal that, even if Oliver was not fully complying at the time he was tased, Defendants' response to Oliver's failure to comply "was not, under the law governing excessive use of force, objectively reasonable." *Hardrick*, 522 F.3d at 764 (citing *Van Gilder v. Baker*, 435 F.3d 689, 692 (7th Cir. 2006) ("Were we to uphold the application of *Heck* in this case, it would imply that once a person resists law enforcement, he has invited the police to inflict any reaction or retribution they choose, while forfeiting the right to sue for damages.")). Oliver's §1983 action is not precluded under *Heck*.

**IT IS THEREFORE ORDERED** that Defendants' motion to dismiss (Dkt. No. 19) is **DENIED as moot**.

**IT IS FURTHER ORDERED** that Defendants shall file a responsive pleading to the amended complaint.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

Dated at Green Bay, Wisconsin this 27th day of October, 2022.

s/ William C. Griesbach
William C. Griesbach
United States District Judge