UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

URIAH L. OLIVER,

        Plaintiff,

        v.                                              Case No. 22-C-797

NICHOLAS BROOKS and
JOSHUA WILSON,

        Defendants.

## DECISION AND ORDER

Plaintiff Uriah Oliver is representing himself and proceeding against Defendants Nicholas Brooks and Joshua Wilson based on allegations that they used an unreasonable amount of force during his arrest. On April 10, 2023, Oliver filed a motion for summary judgment, and on July 7, 2023, Defendants filed a cross-motion for summary judgment. For the reasons explained in this decision, the Court will deny Oliver's motion, grant Defendants' motion, and dismiss this action.

## BACKGROUND

On May 24, 2022, Brooks and Wilson, who are deputies with the Kenosha County Sheriff's Department, responded to Walmart for a welfare check. Dispatch advised them that a woman identified as Audria Chavers had called and stated that she was in the bathroom and that her child's father was in the parking lot in an "Infinity." Chavers stated that her child's father "wanted to put hands on her." Dkt. Nos. 48, 64 at ¶¶1-2, 8-9.

Brooks asserts that, when he arrived at the Walmart, he observed a car generally matching the description provided by dispatch. The driver of the car was attempting to back up. Brooks states that he stopped his squad car behind the car, at which time Oliver reparked and got out of

the car. Brooks asked Oliver if he was leaving or if he had just arrived. Oliver stated that he had just arrived and that his girlfriend was inside. Oliver confirmed that his girlfriend's name was Audria and noted that they had had an argument and he was going into the store to see her. Brooks informed Oliver that Audria had called in with a complaint. After a brief back-and-forth, Oliver moved to go into the store, and Brooks told him to remain there and not go into the store. Dkt. Nos. 48, 64 at ¶¶10-23.

Oliver then abruptly moved toward his car, at which time Brooks forcefully told Oliver to stop moving and to not get in the car. Brooks followed Oliver to his car and made efforts to stop him from entering the car, including telling him that he is not leaving, placing his hand on the car door, and grabbing Oliver's arm as he tried to enter his car. Brooks explains that, at that time, he was concerned for his own safety and the safety of others in the event Oliver had a weapon in his car. Wilson arrived as Brooks was ordering Oliver to stay out of his car. Brooks states that he pulled Oliver away from the car and attempted to place Oliver's hands behind his back, but Oliver roughly pulled away and began running through the parking lot. Brooks and Wilson began a foot pursuit through the parking lot, repeatedly yelling at Oliver to stop running and to get on the ground. Dkt. Nos. 48, 64 at ¶¶24-33; 65-69.

As Oliver ran into the vestibule of the Walmart, Brooks drew his taser and yelled at Oliver that if he did not stop running, he would be tased. Oliver tried to enter the store, but the sliding glass doors were closed and blocked his way. Wilson also ran into the vestibule and pointed his taser at Oliver. At this time, Oliver moved a few feet away from the sliding doors and turned to face the wall away from Brooks and Wilson. Brooks and Wilson both yelled at Oliver several times to get on the ground or he would be tased. Oliver did not comply. Oliver's hands were at about chest level and moving toward his unzipped jacket. Brooks and Wilson yelled at him to stop

reaching. Oliver then placed his hands on the wall just above head level. Brooks repeatedly told Oliver to get on the ground or he was going to get tased. Oliver paused and dropped his hands to his waist. He made a slight turn toward Brooks, and yelled at Brooks, questioning if they were really going to do this to him. Oliver continued yelling over Brooks and Wilson's orders to get on the ground or he would get tased. At this point, the sliding doors to the store were open. Oliver looked in their direction and slowly took one or two steps toward the sliding doors with his arms extended in front of him at chest-height. Wilson then deployed his taser. Brooks did not deploy his taser. Dkt. Nos. 48, 64 at ¶¶34-48.

After being tased, Oliver fell to the ground, and Brooks rolled him onto his stomach and placed him in handcuffs. Brooks asserts that he placed his knee on the upper part of Oliver's back consistent with a three-point ground stabilization technique taught at the police academy. Brooks explains that, given Oliver's prior resistance and attempts to escape, he believed he needed to secure Oliver for his own safety and the safety of other officers. Dkt. Nos. 48, 64 at ¶¶49-60; 70-83.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). In response to a properly supported motion for summary judgment, the party opposing the motion must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*,

3

612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

Oliver's excessive force claim arises under the Fourth Amendment, which guarantees citizens the right "to be secure in their persons . . . against unreasonable . . . seizures." *Graham v. Connor*, 490 U.S. 386, 394 (1989); *see Tennessee v. Garner*, 471 U.S. 1, 7–8 (1985) (claim of excessive force to effect arrest analyzed under a Fourth Amendment standard). Under the Fourth Amendment, the Court applies an objective reasonableness test, considering the reasonableness of the force based on the events confronting the defendant at the time and not on his subjective beliefs or motivations. *See Horton v. Pobjecky*, 883 F.3d 941, 949–50 (7th Cir. 2018) (citations omitted). This test carefully balances "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id*. at 949 (quoting *Graham*, 490 U.S. at 396).

This balance "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Horton*, 883 F.3d at 949 (quoting *Graham*, 490 U.S. at 396). The Court must consider "the totality of the circumstances, including the pressures of time and duress, and the need to make split-second decisions under intense, dangerous, uncertain, and rapidly changing

4

circumstances," without resort to "hindsight's distorting lens." *Id*. at 950 (citing *Graham*, 490 U.S. at 396; *Ford v. Childers*, 855 F.2d 1271, 1276 (7th Cir. 1988)).

Brooks and Wilson are entitled to summary judgment because no reasonable jury could conclude that the force used while arresting Oliver was objectively unreasonable. Brooks approached Oliver following a report that his girlfriend had locked herself in a public restroom because Oliver had stated his desire to "put hands on her." It was therefore reasonable for Brooks to assume that a potential domestic violence situation was afoot. When Brooks tried to talk to Oliver, he immediately demonstrated his unwillingness to engage with Brooks or to comply with his orders. Not only did Oliver walk away from Brooks toward the store where his girlfriend was hiding, but he also tried to enter his vehicle against Brooks' orders, pulled away from Brooks' hold, and ran directly toward the store to evade Defendants. The only reason Oliver did not enter the store is because the sliding doors were closed.

Oliver then again demonstrated his unwillingness to comply with Defendants' repeated orders to get on the ground. Oliver shouted "no" in response to Defendants' orders and took his hands off the wall, and then when the sliding doors to the store opened, he slowly started moving away from Defendants toward the open doors. At this point, it was reasonable for Defendants to assume that Oliver intended to enter the store in an effort to escape. Given that the open sliding doors were only a few feet away, Defendants had almost no time to respond to prevent Oliver from entering the store—nothing in his actions implied he intended to comply with their verbal commands. Allowing Oliver to enter the store could have exposed others to danger, including to a chaotic chase through the store. As Defendants note, it was unknown at that time if Oliver had a weapon, but it was reasonable for Defendants to account for that possibility. Accordingly, based

5

on the totality of the circumstances, the Court concludes that Wilson's decision to tase Oliver was reasonable.

Oliver insists that at the time he was tased, he was attempting to comply with Defendants' orders to get on the ground and was at most only passively resisting. But a review of the bodycam video establishes that no reasonable jury could credit Oliver's characterization of his actions. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 378–81 (2007). Nothing in Oliver's demeanor communicates an intention to comply with Defendants' orders. The video shows Oliver orally refusing to comply, gesturing dismissively at Brooks while he yells over Defendants' repeated orders, and looking toward the now open sliding doors as he slowly moves in that direction away from Defendants. No reasonable jury could conclude based on Oliver's actions in the video that he was attempting to comply or that he was only passively resisting.

Finally, Oliver asserts that Brooks used excessive force when he rolled him onto his stomach, pulled his arm behind him, and kneeled on his back while handcuffing him. Oliver improperly raises these allegations for the first time at summary judgment. Although he was permitted to proceed on an excessive force claim against Brooks, the basis for that claim was that Brooks improperly tased him. Development of the records shows, however, that only Wilson tased him. Oliver now attempts to salvage his claim against Brooks by alleging that Brooks used excessive force when he handcuffed him, but a plaintiff cannot add new factual allegations or a new factual basis for a claim at the summary judgment stage. *See Whitaker v. Milwaukee Cnty.*, 772 F.3d 802, 808 (7th Cir. 2014) (holding that plaintiffs cannot amend their complaints at the

6

summary judgment stage). Regardless, even if Oliver had been permitted to proceed on this basis, the video disproves Oliver's characterization. The video shows none of the rough handling Oliver describes. After Wilson tased Oliver, Brooks worked quickly and decisively to restrain Oliver. No reasonable jury could conclude that his actions were unreasonable. Brooks is therefore entitled to summary judgment.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Oliver's summary judgment motion (Dkt. No. 40) is **DENIED**, Defendants' summary judgment motion (Dkt. No. 55) is **GRANTED**, and this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Green Bay, Wisconsin this 17th day of August, 2023.

s/ William C. Griesbach
William C. Griesbach
United States District Judge

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serious physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.